May it please the Court, my name is Jeffreth Matemu. I am here for the petitioner and the question before this Court today is whether substantial evidence supports the denial of asylum and withholding of removal on the part of the petitioner. Can you speak up so we can hear you? Great, thank you. Thank you. The question today is whether substantial evidence supported the denial of asylum and withholding of removal on the part of the petitioner. The petitioner applied for asylum and withholding of removal in the immigration court in Charlotte, North Carolina and it was denied by the and the particular social group that she presented at the time was women in Honduras who suffer domestic violence and are unable to leave their relationship. Now, both the immigration judge and the BIA, they missed the point entirely because the entire analysis of the case was about gang violence, although there were also a gang member, but that was not the main issue in that case, although both of them are claims. So what is the strongest point in your favor? What is the main issue? The main issue is that the petitioner was being persecuted by her domestic partner and she couldn't leave the relationship and she was being treated as property and being in that particular social group would mean that she was persecuted and she has reasonable fear of being persecuted in the future because the same person is free out in Honduras and she was claiming asylum based on being a member of that particular social group. And other points were that it's just how... So what was the error? The error, there are very many errors here. First of all... That's right, yes. Okay, the standard, the immigration judge first said that the evidence was both credible and incredible, the same evidence that her testimony was credible and also not credible. And the immigration judge also said that he required clear and convincing evidence of injuries and that is not the standard for proving asylum. The standard is just a well-founded fear of persecution under Section 208. Other issues were that the immigration judge, first of all the BIA adopted and supplemented the immigration judge's decision. So the final decision basically is what the immigration judge decided. The immigration judge did not consider the country conditions as it relates to this case and... Did you represent the claimant before the immigration authorities? Yes, Judge. And did you examine her? Did you pose questions to her? Yes, yes, Judge. And did you pose rebuttal questions to her? Excuse me, rebutting which claim? Any claims. Yes. Yes, you did both opening questions and rebuttal questions. Yes, Judge, I did both. I hadn't seen those in the record, but I take your point. And you have represented clients before this court before? Yes, Judge. Have you ever prevailed? Yes, I prevailed the last time I was here. Last time you were here, were you the appellant? I was representing the petitioner. The petitioner? Yes. And what was the claim there? The claim was whether prayer for judgment continued constitutes a conviction for purposes of denial of cancellation of removal. What? I'm sorry, I can't understand what you said. It was whether a North Carolina prayer for judgment continued, which is not actually a conviction, whether that can be a conviction for the purposes of denying cancellation of removal for certain non-permanent residents. Was that Gonzalez v. Sessions? Yes, it was. Do you ever file reply briefs in your cases? No, I have never filed a reply brief. Have you ever requested oral argument? What was the question again, Judge? Have you ever requested oral argument? You know, you get a form and you tell the court whether you think oral argument would be worthwhile. No, I have never requested oral argument. Why didn't you file the opening brief on time in this case? Why did you not file the opening brief on time? Well, the only brief that you filed, because you didn't file a reply brief. Well, Judge, I believe I was still in the process of figuring out how to articulate my arguments and getting my materials together, and I think... So then why not file a motion to continue? Your argument is like half a page long when you did file the brief. Okay, three quarters of a page long. Yes, Your Honor, the way I saw it is that that was just the only point was really whether my client was a member of that particular social group or not. And I was thinking that just that statement that the familial relationship between my client and the domestic partner... Is this the only time you've missed a court deadline on behalf of a client? Yes, that's the only time, Judge. What, in the Fourth Circuit? In any circuit. In any state court? I don't practice in state court. Did you ever? I did some... Maybe some... Let me try to remember. Maybe some... I would say probably some traffic cases back in New York. That's a long time ago. Never in North Carolina? No, never in North Carolina. Did you fail to appear on behalf of a client? Failed to appear at a hearing. Okay. I might have, but I don't... Okay, let's get back then to your... Wait, you might have, but you don't remember? I don't remember if I failed to appear. I'm just trying to remember because I have to be sure. How long have you been practicing law? I've been practicing law for 11 years. All in North Carolina? No, not all in North Carolina. I practiced in New York for a long time. Do you remember the New York and North Carolina bars? No, only the New York bar. Only the New York bar? But your office, on your brief here, is in Raleigh. Yes, Judge. I can practice only immigration law in North Carolina. On the basis of a New York license? Yes, on the basis of a New York license. Did you go to law school in New York? I went in Washington, D.C. Washington, D.C.? Yeah, American University at Washington, D.C. I think the reason that we're asking you these questions is that this doesn't seem to be a very full representation for your client in this case. And I think you hold yourself out as an expert on immigration law. Isn't that right? Yes, Judge, that was the subject of my LLM. You said, yes, that was the subject of your LLM? Yes. And Judge Motz's question was about whether you hold yourself out as an expert on immigration. I would say I hold myself as a specialist in immigration law. And you market your legal business that way? I only say that I specialize in immigration law. I don't think I call myself an expert. But you specialize in immigration law? Yes. You said you'd never filed a reply brief in one of these cases? I have never filed a reply brief. So you've always been, I guess, made a decision that your opening brief was enough to win the case for your client without oral argument, which was never requested? I have never, even after I read the reply briefs, I look at them and I see that if my opening brief, most of it I see that most of those issues, they are just replying to the issues that I've already raised. And the way I look at it is that if my arguments in my opening brief and on the record if they are not sufficient to prevail in the case, sometimes I look at it like I do not see what a reply brief... Wait, so are you saying that you don't think your arguments are sufficient to prevail in this case? Well, maybe not your arguments, but the petitioner's position in this case. You're saying it's not sufficient? No. That's why you didn't? I did not say that. I said I believe that it was sufficient. You do. Okay. I've counted the lines of argument instead of just three quarters of a page because there's a lot of space in here. The lines of argument in your opening brief, there are 17 lines of argument. That's it. So what's your strongest point on behalf of your client in those 17 lines of argument on pages 12 and 13? It is just the membership in a particular social group which the immigration judge and the BIA totally ignored. Right. There was, I see that, a complete lack of reasoning below. You're right in terms of that may have been ignored about the domestic violence situation, correct? Yes, Judge, that's correct. Thank you. If you can use whatever time you want, but I don't think I have any more questions. Judge, if I can continue. The immigration judge had said that there was no attempt to relocate, but there is evidence in the record that my client tried to relocate. In fact, went to try to live with her father and the prosecutor still followed her over there and continued harassing her. There was a lot of evidence of beatings, of psychological, mental torture. And in denying the relief under the Convention against Torture, the immigration judge said that he could not see that, you know, that that conduct amounted to torture. But our contention is that all those activities taken together would amount to torture. And also that the police in Honduras are always... She testified and the country condition report shows that the police are always working with the gangsters. That is why she could not be able to... She could not report this and she could not have any confidence that the government would do anything. She tried to report, she went to a judge, she went to the police, and she was told that's a domestic issue that they will not get involved in. So that, I believe, would also form a basis for relief under the Convention against Torture because those are people in authority who should have been able to protect the petitioner, but they turned a blind eye or actually participated in the persecution of the petitioner. Your time has expired now. You have reserved some time for rebuttal. Thank you, Judge. Good morning, Your Honors. May it please the Court, my name is Julia Tyler and I represent the respondent in this case, Attorney General Barr. Your Honors, Petitioner's counsel is correct that substantial evidence is the standard in this case and that is an exceedingly narrow standard. But our position is this case primarily implicates, as I think that you all have indicated, are the issues of waiver and exhaustion. As is fully addressed in Respondent's Brief, Ms. Avila, through her counsel, has either waived or failed to exhaust each and every particular social group that she articulated at any point during this litigation. My colleague mentioned her first particular social group, which was articulated before the immigration judge, as was her burden to articulate it before the immigration judge, which was women in Honduras who suffer from domestic violence and are unable to leave their relationship. Unfortunately, the immigration judge found that she had not... I'm sorry. But what about the fact that the immigration judge and the BIA both just didn't acknowledge or discuss the fact that she had gone to the police and they said, oh, nothing we can do for you because it's a domestic situation? Okay, so that's an issue of her responsibility and her burden to establish that the Salvadorian government is unable or unwilling to control her persecutor or the person who mistreated her is a private actor. And doesn't require any special group? Well, you would have to... For that claim. For that claim, however, you don't get to unable and unwilling if you don't establish a nexus between the mistreatment that she experienced in a protected social group. Unable and unwilling is an entirely separate issue. If she is claiming that she wants... There are a variety of relief she can request, right? And what did she request this time? She requested asylum, withholding of removal, and CAT. Okay, and for the CAT claim, she doesn't have to show a particular social group. That is absolutely correct, but it would be an issue of literally acquiescence as opposed to, I'm just trying to make sure I understand what standard we're dealing with and what claim. I would say that by not arguing the convention of torture up to the Board of Immigration Appeals and not addressing it at all in her brief to this court, that she failed to exhaust the CAT claim by failing to raise it to the board in any manner or form of any kind. But I'm happy to address your questions, Judge Thacker. There was evidence. She said that she had... I believe she said she called once or said something to a police officer and the police officer said it was a domestic situation. But that isn't really... I don't think that really meets the standard of proving that a private, that the Honduran government is unable and unwilling to control her. But my question was really about the... There's no discussion of that in the IJ or the BIA's opinions. Well, I think what the immigration judge was articulating... It's like it didn't happen. I'm sorry? It's like it didn't happen. It's not discussed. So... I think the immigration judge was persuaded by her negatively by her testimony that she didn't take any sort of... Her testimony was quite vague, by the way. But so is the... Okay, so you were about to say what you think the immigration judge was persuaded by, but we don't know what the immigration judge thought about that particular issue because it's not mentioned. It isn't mentioned, but what the immigration judge does seem to focus on is what he calls the more formative overtures to get help. And I believe that's taken from her testimony that she did go to court one day. I believe that my colleague mentioned that she went before a judge. That is not in the record. But she apparently, if you look at her testimony, she says, as soon as I went inside the door, I turned around because an attorney that she spoke to in the building told her it was a long process. Were you present when the immigration judge... Was there a hearing before the immigration judge? Oh, no. No, no. Okay, so you're in the same position we are in that we're looking at the immigration judge's opinion. And the thing that I was struck by was that the immigration judge found her not credible, but he found her not credible on the basis of this confusion between the 18th Street gang and the Zetas. And, in fact, when you read her testimony, there is no... There may be basis for finding her not credible, but that's not one of them. You don't disagree with me on that? I'm going to... I'm going to... My response to that, I'm not trying to do a sideways on you. But... You won't be able to. Maybe just answer that. You can answer that question, yes or no, and then go and tell me why it doesn't make any difference, if you want to. I did not read the record regarding her testimony of whether or not her husband was affiliated with the 13th Street, MS-13, 18th Street gang or Zetas to be consistent. And I didn't think that she explained... You think that was the basis for finding her not credible. Oh, it was the basis for finding her not credible. Well, I know it was the basis that he found her not credible. I'm asking you if this record, fairly read, provides a basis for finding her not credible. The record is a big mess, right? We would agree with that. There would probably... It looks like there are translation problems. We have a pretty hysterical claimant. At least that's the way it reads. We're all in the same spot. So you weren't there, we weren't there. But, Your Honor, I would say that the reason we shouldn't be in this spot, and again, I think this is something that the three of you have focused on, is that this matter should have been raised to the board. If the adverse credibility determination, which does exist in the record, and the immigration found her only credible with respect to the issues that she corroborated, then it was counsel's responsibility to raise that issue to the board. Okay, and that's an argument. And it was not exhaustive. Okay, but what I asked you was, is this asserted conflict between the 18th Street Gang and the Zillas, is that a basis for finding her not credible? I think it would be. Okay. I'm asking about this case. Yes, I understand. Not in some other world. I understand. I read the testimony as inconsistent, and unfortunately, we are not in the position that legally we should be in because that issue was not raised to the board, and the board did not have an opportunity to address the immigration judge's finding on adverse credibility and relook at the record and potentially remand the case to the immigration judge for a different, better, more fulsome adverse credibility determination. Or credibility determination. Maybe not even hint which way we're going. Well, I, you know, I did hear my colleagues say that it was a credibility determination, but not a credibility determination. I think the immigration judge, and again, there are difficulties in giving these oral decisions. They're speaking from the bench. They're not written decisions. So, but I think it's fairly clear that the immigration judge was finding her not credible. He says, I will only find her credible as to the issues that she actually corroborated. And that would basically be an adverse, a full-on complete adverse credibility determination. I just wanted to return, if I may quickly, I think that the primary issues in this case really are the particular social group. That is, the primary issue that's followed a tenor through this case throughout. The particular social group, actually, my colleague mentioned too, but women in Honduras who suffer from domestic violence and are able to leave their relationship is the particular social group that she articulated before the immigration judge. In a separate brief, and if you look at the record at page 130, she goes into some detail about the immutability, the particularity, and the alleged social distinction of that group. The immigration judge found that she had not established a nexus to any group of which she was a member that was cognizable. And that issue was, again, abandoned before the Board of Immigration Appeals. She did not raise that in her brief. Then in her brief to the board, she raised an issue, she raised a new particular social group, which is inappropriate under board precedent, working class women of Honduras targeted for gang activity. She only raised that particular social group to the board. The board addressed it and said you didn't, well, basically just said there's no nexus to that, that's not a cognizable social group. And then we have on appeal to this court for the first time, we have an articulation, and my colleague mentioned it again, that she was persecuted on account of her membership in a family. Now she articulated it in the appeal brief as the nuclear family. She also articulated it as a persecuted nuclear family, which of course under board precedent is a circular, is circular in reasoning, and we know that you cannot have a cognizable social group that is defined by the persecution itself. Was she represented on her appeal to the BIA by counsel? She was, this gentleman. Same counsel? Yes. And before the IJ? The same counsel. Thank you. I also wanted to mention that my colleague mentioned the Convention Against Torture, and unfortunately with respect to that decision as well, the Convention Against Torture completely failed to challenge  In fact, she does not even address these forms of protection of removal as she sets forth controlling law and how this case would rule. She discusses the burden associated with asylum. She repeatedly refers to well-founded fear and not the clear probability standard of fear or possibility of future persecution that is associated with the claims of withholding of removal and the Convention Against Torture. So accordingly, those issues are also waived. If your honors have no further questions for me, I will. I don't think we do. Thank you very much. Thank you very much. Appreciate your time. Counsel, did you intentionally choose to waive all these arguments, like the CAT scan? As regards CAT, I really thought that I did not have good grounds to develop the CAT. Well, your witness testified to pretty extensive abuse that might equal torture. So what element was missing? Out of doing those types of cases for a long time, the CAT argument is just usually an argument that 99% of the time or never is it one. So your answer to Judge Mott's question is yes, you did intentionally waive the CAT claim. Yes, Judge, I didn't think the CAT claim was really going anywhere. It wouldn't go anywhere. What about changing the social group that she was a member of? Did you intentionally do that? My idea was this, that whatever I call the group, it all is defined by the same elements. Well, why not call it the same thing, then, so you don't leave yourself open to the fact that you're changing social groups? Yes, in hindsight, that is something I should have done, but all I was trying to do is to try and – because the same elements exist in every way that I have defined that social group. It's the same element. It is a familial relationship where you have a partner that is persecuting the other partner and cannot leave and cannot go anywhere else and is stuck. So all these were ways of me trying to put the same elements together, even if I'm saying it in different – You would also have to show the government couldn't help you, right? That would be an element, too, right? Yes, to show that the government couldn't help us. So maybe that would be something worth putting down in a brief. So whatever you call it, it has these elements, and then establishing what record evidence supports those elements. And so what did your client testify to that would support those elements? That they live together with the persecutor, they had children, and the persecutor beat her. Do we know the extent of – do we have hospital records? No, we do not have hospital records. Do we have her testifying she went to the hospital? Yes, she did. More than once? And she had some sort of injury that kept her there or required medical condition more than once? Yes. You think the record says that? Yes, the record does say that. She says that. She says that. But you don't say it in your brief, right? No. What about the – never mind. I do have one final question. It seemed to me that there was a credibility determination that was based on this business about the various gangs. Did you appeal that saying there wasn't a basis for it and cite the record evidence? It would seem to suggest that the IJ had misunderstood her testimony. No, Judge. The way I looked at it was that she was credible. That she what? She was credible. She was credible, but you didn't think it was worth – because that is the basis for the IJ's credibility determination, right? So to show that that was wrong, wouldn't it be worthwhile? But you made a decision not to point out why it was wrong, right? Yes, I made that decision going by the fact that she had been found to be credible by the immigration judge, and the BIA basically adopted the immigration judge's decision. You thought she was found credible? The judge found her credible on the matters that were corroborated. Right, but almost nothing was corroborated. And incredible on the parts that were not corroborated. So my assessment of that situation was that on what was essential, she was found to be credible, on what was essential to her claim. Okay. So I did not go into whether she had been found incredible in other issues that were not essential to the decision that the judge made. Okay. There are no more questions. We will come down and say hello to the lawyers and then take a brief recess. And we will then come back and hear the rest of the court. This Honorable Court will take a brief recess.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker